IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYSON E.,[1]

      Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civ. No 6:20−cv−00474−CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Tyson E. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for disability and disability insurance benefits (DIB) and supplemental security income (SSI). Full consent to magistrate jurisdiction was entered on April 3, 2020. (#4). For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

On remand, the ALJ shall reconsider Plaintiff's subjective symptom testimony, the medical opinion evidence, and the lay witness statement. The ALJ should also reconcile the decision with the subsequent determination that Plaintiff is entitled to SSA disability benefits since July 2019.

**BACKGROUND[2]**

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties, and any relations, in this case.

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 14.

Plaintiff was born on March 16, 1996, and he was 15 years old at the alleged onset date. He alleges he is unable to work due to a history of a traumatic brain injury and resulting bipolar disorder. Plaintiff was previously found disabled (Tr. 449), but his benefits were terminated in January 2015 (*see* Tr. 297).

Plaintiff filed the current claims for benefits in December 2015. Tr. 424-32. These claims were denied initially in May 2016 (Tr. 349-57), and upon reconsideration in August 2016 (Tr. 362-67). Plaintiff requested a hearing before an ALJ. Tr. 368-69. Plaintiff, represented by a non-attorney representative, and a vocational consultant testified at an administrative hearing before Administrative Law Judge B. Hobbs on June 1, 2018. Tr. 263-90. The ALJ issued a decision finding Plaintiff not disabled on July 6, 2018. Tr. 11-26. The Appeals Council denied Plaintiff's request on January 24, 2020. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.   Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such

work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.    The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2018.

2. Plaintiff has not engaged in substantial gainful activity since March 19, 2011 the amended alleged onset date.

3. Plaintiff has the following severe impairments: bipolar disorder.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. Plaintiff cannot tolerate extreme heat. Due to his mental impairments, Plaintiff can have no more than frequent interactive contact with the public. He can have no more than frequent changes in a routine work setting.

6. Plaintiff has no past relevant work.

7. Plaintiff was born on March 16, 1996 and was 15 years old, which is defined as a younger individual age 18-49, on the alleged onset date.

8. Plaintiff has a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because he does not have past relevant work.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including Commercial Cleaner, Packager, Kitchen Helper or Dishwasher.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act from March 19, 2011, through the date of the decision. Tr. 26.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d

at 1041). "However, a reviewing court must consider the entire record as a whole and may not

affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec.*

*Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a

reviewing court "cannot affirm the [Commissioner's] decision on a ground that the

[Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's

decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*

*v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

The Court finds that the ALJ erred by finding that Plaintiff's traumatic brain injury (TBI)

was non-severe at step two and did not cause any limitations not already included in the RFC.

At step two, the ALJ must determine if the claimant has a medically determinable

impairment that meets the durational requirements and "significantly limits [the claimant's]

physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(a)(4)(ii),

404.1520(c). For example, for a mental impairment to be severe it must affect the claimant's

ability to see, hear, and speak; understand, carry out, and remember simple instructions; use

judgment; respond appropriately to supervision, co-workers and usual work situations; and deal

with routine changes. 20 C.F.R. § 404.1522(b)(2)-(6). The ALJ is required to consider the

combined effect of all of the claimant's impairments on his or her ability to function. *Howard ex*

*rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the ALJ determines that a

claimant has a severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. SSR 96-9p, 1996 WL 374184. Where an ALJ fails to identify a severe impairment at step two, but nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless.

The ALJ found that Plaintiff's traumatic brain injury was medically determinable, but "well-managed" and therefore non-severe. Since the ALJ did not deny the claim at step two and found Plaintiff's other impairments were "severe," he did not suffer any prejudice at step two. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The issue, then, is whether the ALJ sufficiently accounted for limitations caused by Plaintiff's TBI in the residual functional capacity finding. The Court finds that he did not.

The ALJ must consider the "total limiting effects" of all of the medically determinable impairments, both "severe" and "non-severe," in determining the claimant's RFC, including the effect of pain. 20 C.F.R. §§ 404.1545(e), 416.945(e); *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (*quoting Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)) (RFC that fails to set out all the limitations and restrictions of a claimant is defective).

Here, in formulating the RFC, the ALJ provided specific limitations to account for his "mental impairment," which implicitly included his bipolar disorder, but not his underlying TBI. Specifically, the ALJ found that Plaintiff "can have no more than frequent interactive contact with the public... [and] no more than frequent changes in a routine work setting." In determining these limitations, the ALJ found that Plaintiff's allegations regarding the severity of his symptoms relating to his TBI were not fully credible because his incidents of decompensation and manic episodes were often related to his failure to take his medication and comply with his

treatment plan. *See* Tr. 22. But Plaintiff's testimony and the medical opinions indicated that

Plaintiff also had impaired judgment, insight, and ability to tolerate stress, all related to his

traumatic brain injury, which was not fully treated by his bipolar medication. The ALJ pointed

to Plaintiff's consistent resistance and occasional "non-adherence" to taking medication, Tr. 22,

as an indication that he was "not serious" about maintaining his stability, Tr. 23, but the medical

opinions show a different point of view, indicating that Plaintiff's inability to tolerate stress and

his non-compliance with his medication plan were actually symptoms of his TBI.

For example, Dr. Marc Williams[3] indicated that Plaintiff required significant support to

manage and maintain his stability on medication. Tr. 984. Plaintiff needed to carefully manage

the stressors in his life, including limiting certain activities as he had consistently had problems

with work that was overly stressful and was subject to becoming overwhelmed and fatigued due

to the combination of his traumatic brain injury and his mood disorder. Tr. 984. Dr. Williams

concluded that while Plaintiff was able to sustain part-time work, "[h]igh stress situations, full

time employment and especially shift work may be difficult to maintain and [could] lead directly

to destabilization increasing risk for further episodes." Tr. 984. Similarly, Dr. Trueblood[4] noted

that Plaintiff appeared to have ongoing deficits in his neuropsychological and/or neurobehavioral

functioning as well as deficits in his insight and executive functioning consistent with the effects

of a traumatic brain injury. Tr. 652-60. Dr. Saccoman reported that Plaintiff was likely to

---

[3] The ALJ gave Dr. Williams' opinion "partial weight because of his longitudinal treating relationship with the claimant where has been able to observe the claimant over time." Tr. 23. The ALJ did not give any cognizable reason for giving partial instead of full weight, and he did not identify the portions of Dr. Williams' opinion that was not entitled to full weight. This was harmful, reversible error on its own, and a reason to reverse and remand for further proceedings.

[4] The ALJ also gave Dr. Trueblood's opinion partial weight (Tr. 24), and this was an error for the same reasons stated in footnote 3.

continue to need his mother's support as a personal care worker and benefited from the stability of having a job coach to check-in with him weekly. Tr. 962.

"Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Caution in making such an inference is especially appropriate when one or more doctors or other medical experts have opined that a mental health patient is not capable of working full time.

Importantly, the Ninth Circuit has held that an ALJ errs when discrediting a Plaintiff on the ground that some of Plaintiff's bouts of remission have resulted from going off medications for a mental illness. "[W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions. *Nguyen*, 100 F.3d at 1465 (quotation marks and citations omitted). *See also, Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir.2011); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir.2010); *Pate–Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir.2009).

Here, the ALJ discounted Plaintiff's severe symptoms resulting from his TBI and bipolar disorder because the impairment seemed "well-managed," but this reasoning failed to consider the nature of these mental impairments and their symptoms, especially considering the medical opinions that Plaintiff could not cope with the stressors of full-time employment. Moreover, as in *Nguyen*, the record shows that Plaintiff's desire and decisions to go "off his meds" were at least in part a result of his underlying bipolar disorder and TBI. Discounting these portions of

Plaintiff's testimony and the medical opinions was an error. These errors resulted in the ALJ improperly finding Plaintiff's TBI non-severe at step two and improperly formulating the RFC without including sufficient limitations to account for his ongoing TBI and bipolar disorder symptoms including lack of judgment, insight, and inability to cope with stressors.

Plaintiff alleges multiple other errors, including failure to properly evaluate Plaintiff's subjective symptom testimony and the medical opinions of Drs. Williams, Trueblood, and Saccoman. As discussed briefly above (see footnotes 3 and 4, *supra*), the ALJ did err by improperly discounting two of the medical opinions. However, because the Court finds that the ALJ erred at step two and in formulating the RFC, it is unnecessary to find any further specific error before ordering the case reversed and remanded.[5] All portions of the decision should be reevaluated on remand.

### ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for further proceedings. On remand, the ALJ shall reconsider the medical opinion evidence, the Plaintiff's subjective symptom testimony, and lay witness testimony.

Moreover, the Court notes that the Plaintiff was found to be disabled and awarded benefits as of July, 2019. There is no indication regarding why Plaintiff is entitled to benefits now but was not entitled to them during the period at issue in this case. The ALJ should reconcile this conflict on remand.

It is so ORDERED and DATED this 22 day of April, 2021.

MARK D. CLARKE
United States Magistrate Judge

---

[5] For these same reasons, remand for immediate calculation and payment of benefits is not appropriate because the record is not fully developed. *See Garrison v. Colvin*, 759 F. 3d 995, 1016 (9th Cir. 2014).